

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Dan W. Jackson
District Attorney
Houston, Texas

Attention:  Mr. John Snell, Jr.

Dear Sir:

Opinion No. O-5621
Re: Auxiliary police officers of the
city of Houston, Texas, serving
by reasons of certain sections
of the city code; and related
question, "Is an auxiliary po-
lice officer an officer within
the meaning of the statutes
which define peace officers?"

This will acknowledge receipt of your opinion re-
quest of recent date. The part of said request pertinent to
the above captioned matter reads as follows:

"A complaint has been brought to our office
alleging 'Aggravated Assault on an Officer', and
it has developed that the 'officer' is an auxil-
iary police officer, under the Office of Civilian
Defense. A Justice of the Peace transferred this
case to us for re-filing in County Court at Law
Number Two of Harris County, Texas.

"Question:  Is an auxiliary police officer an
'officer' within the meaning of the statutes which
define peace officers?"

"I have received yours of October 28th; and,
in reply, wish to cite you certain sections of the
City Code of Houston, Texas:

"Sec. 1643.  Special Officers for temporary
service in emergency.  The mayor, in case of a riot,
flood, fire, or other public emergency, shall have
power to appoint, for temporary service only and

Honorable Dan W. Jackson, page 2

not to exceed thirty days, any number of special
officers and to discharge the same at will.  Said
special officers shall be paid by the city for
service rendered the city in the discharge of their
duties at a salary rate to be determined by the
mayor.

"Sec. 1280 (first and last paragraphs)  Po-
lice Chief to adopt rules and regulations; publi-
cation of rules; auxiliary police force; air raid
wardens.

"The chief of police, subject to the approval
of the mayor, is hereby authorized, directed and
empowered to prepare and promulgate such rules and
regulations, and revisions and amendments thereof,
as may, in his discretion, be necessary for the
conduct of persons during air raid periods, and in
order to carry out the expressed intent of this
article; provided, however, that no such rule or
regulation shall be contrary to the provisions of
this article.

"The chief of police, subject to the approval
of the mayor, may create, form and conduct any auxil-
iary police force or other organization or appoint
such air raid wardens or other persons who may, in
his discretion, be necessary to carry out the pro-
visions of this article and the rules and regula-
tions adopted pursuant thereto.

"Sec. 1681.  Authority to appoint; police powers.
The mayor of the city is hereby authorized to ap-
point, from time to time, special officers to serve
and act at private places of business, institutions
or homes for duty in and at such places only, upon
the request and recommendation of the owners, ten-
ants or proprietors of such places.  Any special of-
ficer who has been appointed by the mayor shall have
full authority of a police officer to protect life
and property at the place for which he has been ap-
pointed.

"    . . . .

"Sec. 1683. Salary. Special officers shall receive no salary from the city, but shall be paid wholly by the person employing them.

"Sec. 1684. Cancellation of commission. The commission of any special officer shall be subject to cancellation at any time by the mayor or chief of police, for any cause that they or either of them deem sufficient.

"Sec. 1685. Expiration of commission. All commissions shall expire automatically at midnight on the thirty-first day of December in any year.

". . . .

"Sec. 1694. Right to appoint temporary special officers in emergency not affected. Nothing in this article shall in any wise limit or abridge the right of the mayor to appoint, at any time, for any cause deemed sufficient by him, in case of an emergency such as fire, floods, riots or other emergencies, such special officers as may be required for a period of not to exceed thirty days.

"Sec. 1695. Subject to call in case of public emergency; may be placed on police department payroll and given badge. It is also further expressly provided that all those holding commissions as special officers, shall be subject to the call of the mayor and the chief of police in case of a riot, flood, fire or other public emergency. Upon the occurrence of any such emergency the mayor shall also have the power to place any special officer on the regular police department payroll for a period not to exceed thirty days, and in such case the chief of police shall issue to such special officer a regular policeman's badge to be used by such officer for the period of time that he is serving in the police department during such emergency.

"The auxiliary police officers of the City of Houston serve by reason of the above sections of the City Code. There is no executive order under which the auxiliary police force is operated."

Article 995, Revised Statutes, 1925, provides as follows:

"Whenever the mayor deems it necessary, in order to enforce the laws of the city, or to avert danger, or to protect life or property, in case of riot or any outbreak or calamity or public disturbance, or when he has reason to fear any serious violation of law or order, or any outbreak or any other danger to said city, or the inhabitants thereof, he shall summon into service as a special police force, all or as many of the citizens as in his judgment may be necessary. Such summons may be by proclamation or other order addressed to the citizens generally, or those of any ward of the city, or subdivision thereof, or may be by personal notification. Such special police force while in service, shall be subject to the orders of the mayor, shall perform such duties as he may require, and shall have the same power while on duty as the regular police force of said city."

Article 36, Code of Criminal Procedure, provides:

"The following are 'peace officers:' the sheriff and his deputies, constable, the marshal or policemen of an incorporated town or city, the officers, non-commissioned officers and privates of the State ranger force, and any private person specially appointed to execute criminal process."

Article 1147, Section 1, Penal Code, provides:

"An assault or battery becomes aggravated when committed under any of the following circumstances:

"1. When committed upon an officer in the lawful discharge of the duties of his office, if it was known or declared to the offender that the person assaulted was an officer discharging an official duty.

" . . . .

To constitute the offense of aggravated assault when an assault is committed upon an officer there must be -- first

an assault; second, the person assaulted must be an officer in the discharge of his duties; and, third, the assault must be made as an interruption of the officer's official duties. The foregoing proposition is supported by our own Court of Criminal Appeals. See Birdette v. State, 150 S. W. (2d) 1035, and the authorities cited thereunder.

Under the discussion of Public Officers in 22 Ruling Case Law, page 397, we find the following language:

". . . on the ground that the principal duty of police officers is the preservation of the public peace, which is a matter of public concern, it has been held that policemen are public officers. . . . It has been held that the members of the detective department of a district police force, organized under state statute which conferred on them the powers of police officers and constables, are public officers and not merely employees of the commonwealth." (Underscoring ours)

In the case of Neallus v. Hutchinson Co., 55 A.L.R. 1191, one Benson was an employee of the Portland Theater and upon the written request of his employer he was appointed special policeman by the City Council of Portland as authorized by the laws of the State of Maine. His services were paid by the theater and in the morning he cleaned up about the theater while at evening and during show time he wore his uniform and was stationed in the lobby and balcony and kept order, quietness, kept the aisles clear in keeping with the fire rules and in a general way preserved the peace. The Supreme Court of that State held that: "As a public officer, Benson was a peace officer."

There is a very able discussion of a situation similar to the one under consideration here found in the Whatley case reported in 3 S. W. (2d) 174, wherein Justice Martin, speaking for our Court of Criminal Appeals, had the following to say:

"Appellant was convicted of aggravated assault upon one J. M. Choate, 'the said J. M. Choate then and there being a special police officer of the city of Big Spring'; penalty, fine of $25.

"A sufficient statement of the facts neces-
sary to illustrate the law points discussed is
briefly as follows:

"The prosecuting witness, Choate, on the 15th
day of May, 1926, received from the mayor of Big
Spring the following written appointment:

"'State of Texas, County of Howard, City of Big
Spring.

"'This is to certify that by virtue of arti-
cle 995 of the Revised Statutes of the State of
Texas, 1925, J. M. Choate is hereby appointed spe-
cial policeman for the city of Big Spring, Texas,
with all and full power given him under the said
article and for the purpose of enforcing any and
all the laws of the state of Texas within the city
limits of Big Spring and the ordinances of the said
city.

"'This commission is to remain in force until
the city council of the city of Big Spring shall
meet in regular session.

"'Given under the hand and seal of the city
of Big Spring, this the 15th day of May, A. D.
1926, at Big Spring, Howard county, Texas.

"'Clyde E. Thomas,
"'(SEAL.)         Mayor, City of Big Spring.

"'Attest:   Louise Middleton, Secretary, City of Big
Spring, by V. M.'

"He thereafter acted as special policeman un-
til after the date of the offense of which appel-
lant was convicted. He was recognized as a police
officer by the other officers of Howard county and
the city of Big Spring, as well as by the public.
He made frequent arrests, collecting fines, and
exercising the duties usually performed by a police
officer.  On the date in question, Choate arrested
appellant on a public street in the city of Big

Spring for disturbing the peace and for being drunk in a public place. He further testified that appellant at the time was driving a car while intoxicated and was drunk and cursing on a public street, and that this happened in his presence and within his view. Appellant was arrested without a warrant. Choate testified that appellant knew he was an officer prior to and at the time of his arrest. Prosecuting witness, Choate, apparently never qualified by taking oath or giving bond, and he acted at all times by virtue of the appointment above at all times, but with the acquiescence and consent of the mayor of Big Spring and the city council thereof.

"  . . . .

"A de facto officer was defined by the court in his charge as follows:

"'A de facto officer is one who is in possession of an office and discharging its duties under color of authority, by which is meant authority derived from an election or appointment, however irregular or informal, so that the incumbent be not a mere volunteer.'

"This definition appears to be in the exact verbiage of the one approved in Brown v. State, 42 Tex. Cr. R. 418, 60 S. W. 548, 96 Am. St. Rep. 806. Whatever might be said of its correctness under a different state of facts, we believe it is correct under those exhibited in this record.

"It was said in Brown v. State, supra, that 'the decisions indicate that, before one can be a de facto officer, there must be some office which he could hold de jure.' It is plausibly argued by appellant that no such office as special police officer had ever been created by ordinance of the city of Big Spring, and none in fact existed under the law, and therefore prosecuting witness, Choate, could not become under any state of facts a de facto officer. A sufficient answer to this is that article

Honorable Den W. Jackson, page 8

995, R. S. 1925, by its terms authorizes the appointment of, and by such, impliedly at least, creates the office of, special police officer. It has been held that a policeman is a peace officer. Hull v. State, 50 Tex. Cr. R. 607, 100 S. W. 403. There being express statutory authority under said article 995 for the appointment of prosecuting witness to the office he assumed to hold, we are of the opinion that he could under a proper state of facts be a de facto officer. Are such facts present in this record? It is urged that the written appointment set out above expressly limited his appointment to office to the next meeting of the city council, and, this contingency having happened long before the arrest in question, he was therefore neither an officer de jure nor a de facto. By the terms of said article 995, such an appointment may be orally made. The record affirmatively shows that witness continued to act with express consent and acquiescence of the city council and mayor of Big Spring, if indeed it does not show that he did so by their express direction, until after the alleged commission of the offense by appellant. It further shows he was reputed to be and was recognized by the public as such officer. We regard these facts as amply sufficient to show affirmatively that he was a de facto officer. Furthermore, we see no reason to doubt that said witness, if he continued to act under an expired commission without interruption and without question by the public or by the officers of Big Spring, but with their acquiescence, that such facts would constitute him a de facto officer. It has been said:

"'Yet, although an expired commission is not color of title to office, still, if an elected or appointed public officer continues, without break, and without question by the public, to exercise the functions of theoffice after the expiration of his commission, this is a continued exercise of the duties of the office by acquiescence, and, under the modern rule, constitutes the person thus acting an officer de facto.' Ex Parte Tracey (Tex. Cr.) App.) 93 S. W. 542.

Honorable Dan W. Jackson, page 9

"Quoting from this authority further:

"'In all of these cases the doctrine is announced that, while a de facto officer may be one who holds under color of election or appointment, which may not be altogether regular, there is still another class who may be de facto officers without regard to any election or appointment; that is, one who exercises the duties of an office for a length of time, and acquiescence on the part of the authorities and of the public. In such cases the incumbent, regardless of his induction, may be considered a de facto officer. * * * A de facto officer may be such * * * without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be.'

"Without expressly approving all the language used in the Tracey Case, supra, we regard it and the case of Brown v. State, supra, as ample authority to support our view that the facts are sufficient to show prosecuting witness a de facto officer on the date in question."

In view of the foregoing authorities, you are advised it is our opinion that an auxiliary police officer is a "peace officer" as that term is defined by Article 36, Code of Criminal Procedure, and is an "officer" within the purview of Article 1147, Section 1, of the Penal Code, when engaged in the lawful discharge of the duties of his office.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Jesse Owens
Assistant

JO:db